UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GEFT OUTDOOR, L.L.C.,                         )
                                             )
                 Plaintiff,                   )
                                             )
         v.                                   )        No. 1:19-cv-01257-JRS-MPB
                                             )
MONROE COUNTY, INDIANA,                       )
MONROE COUNTY BOARD OF ZONING                 )
APPEALS,                                      )
                                             )
                 Defendants.                  )

**Entry on Motion for Reconsideration, Motion for Permanent Injunction, and Motion to Stay Case**

GEFT Outdoor LLC ("GEFT") sought to erect a digital billboard in Monroe County, Indiana ("County"), but its specific plans did not mesh with the County's sign ordinance. After the County denied GEFT's application for a variance, GEFT filed suit under 42 U.S.C. § 1983, alleging that the sign ordinance violates the First Amendment as incorporated against the states under the Fourteenth Amendment. GEFT moved for partial summary judgment on all claims other than that for damages. (ECF No. 53.) The County moved for summary judgment on all claims. (ECF No. 63.)

On August 10, 2021, the Court issued its Order on Motions for Summary Judgment, granting in part and denying in part the cross-motions for summary judgment. The Court enjoined the County "from (1) enforcing the exemptions in Ordinance § 807-3(C)(2) and (3)—i.e., continuing to exempt those kinds of signs from the permit requirement—and (2) applying the variance process in Chapter 812 to

variances from the sign requirements in Chapter 807." (Order on Motions for Summary Judgment, 42, ECF No. 90.)

On August 18, 2021, GEFT filed a Motion for Permanent Injunction, (ECF No. 93), seeking a separate order permanently enjoining the County as ordered in the Order on Motions for Summary Judgment. GEFT also filed a Motion for Reconsideration, (ECF No. 94), requesting the Court to reconsider portions of the Order on Motions for Summary Judgment and filed an Unopposed Motion to Stay Case Pending Ruling on the motion to reconsider and/or appeal, (ECF No. 107). GEFT correctly states that the Court's decision focused on the commercial aspects of the regulations and did not address GEFT's claim that the permitting scheme was an impermissible prior restraint on speech. Further, since the Court issued its Order on Motions for Summary Judgment, a jurisdictional issue caught the Court's attention. Accordingly, the Motion for Reconsideration is **granted**, the previous Order on Motions for Summary Judgment, (ECF No. 90), is **vacated**, and the Court issues this Entry ruling on the cross-motions for summary judgment.

## I.   Background

In Monroe County, outdoor signs must comply with the County's sign ordinance ("Sign Standards"). The announced purpose of the Sign Standards is "to promote public health, safety, and welfare . . . ." Ord. § 807-1. More specifically, two of the County's goals in enacting the ordinance were (1) "maintaining and enhancing the aesthetic environment and the County's ability to attract tourism and other sources of economic development and growth," Ord. § 807-1(3), and (2) "improving pedestrian

and traffic movement and safety (e.g., maintaining appropriate sight distances at intersections and reducing distractions)," Ord. § 807-1(4).  A "sign" includes any "device, fixture, placard, or structure that uses any color, form, graphic, illumination, symbol, or writing . . . to communicate information of any kind to the public."  Ord. § 801-2.

Under the Sign Standards, "except as otherwise provided, no person shall erect, repair, or relocate any sign as defined herein without first obtaining a permit from the Administrator."  Ord. § 807-3.  The Administrator is currently the County Planning Director.  (Wilson Dep. Tr. 31:21–23, ECF No. 54-2.)  Generally, a speaker wishing to publish a sign must submit an application and pay a fee.  Ord. § 807-3(A).  The County Planning Director will issue a sign permit only if "the proposed sign is in compliance with all of the requirements of this zoning ordinance."  Ord. § 807-3(B).  Those requirements include limits on placement, illumination, maintenance, height, setback, and numerosity.  Ord. §§ 807-5, 807-6(A), 807-6(C)–(F).  The Sign Standards do not specify a time limit for the County Planning Director to act on any given application.

Not every sign requires a permit, however.  The Sign Standards exempt four kinds of signs from the permit requirement:

(1)   Any sign of not more than one and one-half (1-1/2) square feet in area; provided, that no more than one sign shall be permitted per zone lot;
(2)   Any governmental sign;
(3)   Sculptures, fountains, mosaics and design features which do not incorporate advertising or identification;
(4)   Temporary noncommercial signs or devices meeting the following criteria:

3

  a)   Each zone lot shall be allocated a total of thirty-two (32) square feet of temporary signs or devices[;]
  b)   Temporary signs or devices may be located no less than ten (10) feet from any other sign or structure;
  c)   Freestanding temporary signs or devices may not exceed six (6) feet in height; [and]
  d)   External illumination of temporary signs or devices is prohibited.

  However, if banners, streamers, pennants, balloons, propellers, strung light bulbs, or similar devices are used as the temporary signs or devices they may only be displayed for a period of no longer than forty-eight (48) hours.

Ord. § 807-3(C). Some of these terms are words of art. A governmental sign is defined as "[t]raffic or other civic signs, signs required by law or emergency, railroad crossing signs, legal notices, and any temporary, or non-commercial signs as are authorized under policy approved by the County, State, or Federal government." Ord. § 801-2. "'Temporary sign' means any sign that is intended to be displayed for a limited period of time and is not permanently anchored or secured to a building or not having supports or braces permanently secured to the ground, including but not limited to: banners, pennants, or advertising displays including portable signs." *Id*. A "Commercial Message" is "[a]ny sign wording, logo, or other representation that, directly or indirectly, names, advertises, or calls attention to a business, product, service, or other commercial activity." *Id*. And a "Noncommercial Message" is just the opposite: a sign that "carries no message, statement, or expression related to the commercial interests of the . . . person responsible for the sign message." *Id*.

A section of the Sign Standards called "Prohibited Signs," bans certain categories of signs even if the sign would otherwise be allowed:

(1)   Portable signs are prohibited.

4

(2)    All animated or changeable copy signs (including digital billboards), or signs which move by mechanical means or by the movement of air are prohibited.

(3)    Temporary signs or devices consisting of a series of banners, streamers, pennants, balloons, propellers, strung light bulbs, or similar devices are prohibited, except as allowed in 807-3(C)(4).

(4)    Snipe Signs[.][1]

(5)    Off-Premise Commercial Signs, except as allowed in 807-4(B).[2]

Ord. § 807-6(B).  An "Off-Premises Sign" is one that "directs attention to a business, commodity, service or entertainment not conducted, sold or offered on the premises where the sign is located, or which business, commodity, service or entertainment forms only minor or incidental activity upon the premises where the sign is displayed." Ord. § 801-2.  In contrast, an "On-Premises Sign" is one that "advertises or directs attention to a business, commodity, or service conducted, offered, or sold on the premises, or directs attention to the business or activity conducted on the premises." *Id.*

Someone who wants to post a noncompliant sign in the County is not wholly without recourse.  As the Indiana Code requires whenever a local government adopts a zoning ordinance,[3] the County has established a Board of Zoning Appeals ("BZA") and a process for obtaining use and design variances.  The BZA makes all variance decisions for the County, including variances from the requirements of the Sign Standards.  Ord. § 812-1.  After the BZA receives an application for a variance, within

---

[1] Though not challenged in this case, a "snipe sign" is a "temporary sign illegally tacked, nailed, posted, pasted, glued, or otherwise attached to trees, poles, stakes, fences, or other objects."  Ord. § 801-2.

[2] Section 807-4(B) is a grandfather clause.

[3] *See* Ind. Code § 36-7-4-901 ("As a part of the zoning ordinance, the legislative body shall establish a board of zoning appeals."); Ind. Code § 36-7-4-918.4 (board of zoning appeals must decide use and design variances).

5

thirty days, the BZA must schedule and announce a date and time for a public hearing.  Ord. § 812-3(A).  The variance approval procedure lists several notice requirements for interested parties.  Ord. §§ 812-3(D)–(F).  After the hearing, the BZA must approve the application, approve the application with conditions, or deny the application.  Ord. § 812-3(H); *see also* Ord. § 812-7 (BZA has authority to make approval contingent on any condition imposed "to protect the public health, and for reasons of safety, comfort and convenience").  But, beyond scheduling a hearing within a certain timeframe, there is no enumerated time limit within which the BZA must act on any given variance application.  (Defs.' Ans. 1st Interrogs. ¶ 8, ECF No. 54-5.)

To approve a use variance, the BZA must find that:

(A)     the approval will not be injurious to the public health, safety, and general welfare of the community;

(B)     the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;

(C)     the need for the variance arises from some condition peculiar to the property involved;

(D)     the strict application of the terms of the Zoning Ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and,

(E)     the approval does not interfere substantially with the Comprehensive Plan. Especially, the five (5) principles set forth in the Monroe County Comprehensive Plan[.][4]

Ord. § 812-5.

To approve a design variance, the BZA must find that the applicant has adduced "substantial evidence establishing that, if implemented:"

---

[4] The Comprehensive Plan is the "inclusive physical, social, and economic plans and policies . . . for the development of the County . . . ."  Ord. § 801-12.

(A)   the approval, including any conditions or commitments deemed appropriate, will not be injurious to the public health, safety, and general welfare of the community, because:

   (1)   it would not impair the stability of a natural or scenic area;
   (2)   it would not interfere with or make more dangerous, difficult, or costly, the use, installation, or maintenance of existing or planned transportation and utility facilities;
   (3)   the character of the property included in the variance would not be altered in a manner that substantially departs from the characteristics sought to be achieved and maintained within the relevant zoning district. . . . and,
   (4)   it would adequately address any other significant public health, safety, and welfare concerns raised during the hearing on the requested variance;

(B)   the approval, including any conditions or commitments deemed appropriate, would not affect the use and value of the area adjacent to the property included in the variance in a substantially adverse manner, because:

   (1)   the specific purposes of the design standard sought to be varied would be satisfied;
   (2)   it would not promote conditions (on-site or off-site) detrimental to the use and enjoyment of other properties in the area . . . ; and,
   (3)   it would adequately address any other significant property use and value concerns raised during the hearing on the requested variance; and,

(C)   the approval, including any conditions or commitments deemed appropriate, is the minimum variance necessary to eliminate practical difficulties in the use of the property, which would otherwise result from a strict application of the terms of the Zoning Ordinance.

Ord. § 812-6.

GEFT is a limited-liability company that buys or leases land and builds, maintains, and operates signs on its properties. (Lee Aff. ¶ 3, ECF No. 54-1.) GEFT leases part of the property at 2500 West Industrial Park Drive in Bloomington, Indiana (part of Monroe County). (*Id.* ¶ 4.) That property is right next to I-69, a major thoroughfare in the County. (*Id.*) GEFT wants to build a digital billboard on

the property, (*id*. ¶ 5)—a billboard that exhibits digital images and text, which GEFT can control by computer—to display all sorts of commercial and noncommercial speech, (*id*. ¶ 7).  On its other billboards, GEFT has tended to display a mix of 62 percent commercial speech and 38 percent noncommercial speech.  (*Id*. ¶ 8.)  It has the requisite state permit from the Indiana Department of Transportation that it needs to erect digital billboards.  (*Id*. ¶ 6.)

On January 16, 2019, GEFT sought variances from the Sign Standards for a digital billboard to be built at the Bloomington property.  Specifically, the variances were from the changeable copy ban, Ord. § 807-6(B)(2); the off-premises commercial sign ban, Ord. § 807-6(B)(5); the sign area standards, Ord. § 807-6(D); height requirements, Ord. § 807-6(F)(1); side/rear yard setback requirements, Ord. § 807-6(F)(2); and front yard setback requirements, Ord. § 807-6(F)(3).  The BZA held a hearing on March 6, 2019, and it unanimously denied GEFT's application.  (Lee Aff. ¶ 11, ECF No. 54-1.)

On March 28, 2019, GEFT filed suit against the County, invoking 42 U.S.C. § 1983 and a state statute.  GEFT challenges the Sign Standards as an unlawful content-based regulation and an unlawful prior restraint, both allegedly in violation of the First Amendment as it is incorporated against the states.  The parties have moved for summary judgment.  (ECF Nos. 53, 63.)  The Court has reconsidered its previous decision and now issues this Entry.

## II.    Legal Standards

Two standards apply here: the standard for summary judgment and the standard for reconsideration.  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of production.  *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  That initial burden consists of either "(1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citing *Modrowski*, 712 F.3d at 1169).  If the movant discharges its initial burden, the burden shifts to the nonmovant, who must present evidence sufficient to establish a genuine issue of material fact on all essential elements of his case.  *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).  The Court must construe all facts and any reasonable inferences arising from them in favor of the nonmovant.  *See Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citation omitted).

Any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  A motion to reconsider "serve[s] a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Lockhart v.*

*ExamOne World Wide, Inc.*, 904 F. Supp. 2d 928, 951 (S.D. Ind. 2012) (quoting *State Farm Fire & Cas. Co. v. Nokes,* 263 F.R.D. 518, 526 (N.D. Ind. 2009)).   A motion to reconsider is appropriate where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered."  *Id.*  A motion to reconsider is also appropriate to request the Court to consider an argument that the Court overlooked.  *Patel v. Gonzales*, 442 F.3d 1011, 1015–16 (7th Cir. 2006).  Here, in its decision on the summary judgment motions, the Court overlooked GEFT's argument about the presence of non-commercial speech and overlooked parts of GEFT's prior restraint arguments regarding the permitting scheme.

Moreover, the Court failed to consider GEFT's Article III standing to challenge the Sign Standards.  "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For these reasons, reconsideration is appropriate.

### III.  Discussion

"Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend I.  According to GEFT, the Sign Standards violate the First Amendment

because they are an unlawful content-based regulation and because they amount to a prior restraint that lacks procedural safeguards. The Court addresses each charge in turn.

### A. Count I: Content-Based Regulation

The parties have not addressed Article III standing. But "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

#### 1. Standing

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing contains three elements." *Id.* at 561. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

GEFT brings a facial challenge to the County's ordinance. Facial challenges on First Amendment grounds lie where a statute "substantially suppresses otherwise protected speech vis-à-vis its plainly legitimate sweep." *Bell v. Keating*, 697 F.3d 445, 456 (7th Cir. 2012) (cleaned up). The question of standing becomes somewhat complicated in the context of a facial challenge to a statute on First Amendment grounds. That is because "[f]acial challenges to overly broad statutes are allowed not

11

primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Secretary of State of Md. v. Munson*, 467 U.S. 947, 958 (1984).

Still, the Seventh Circuit has made clear that the requirement that a plaintiff prove standing in every case is not "elided" simply because a plaintiff seeks to facially attack a statute. *Harp Advert. Ill., Inc. v. Village of Chicago Ridge*, 9 F.3d 1290, 1291 (7th Cir. 1993). In *Harp*, the plaintiff brought a facial challenge to a sign ordinance on First Amendment grounds but failed to challenge an equally applicable zoning code's size restriction that would have independently blocked the plaintiff's large sign from being built. *Id.* at 1291–92. The Seventh Circuit wrote, "An injunction against the portions of the sign and zoning codes that it has challenged would not let it erect the proposed sign; the village could block the sign simply by enforcing another, valid, ordinance already on the books." *Id.* at 1292. In other words, victory in the lawsuit would not redress the plaintiff's alleged injury in not being able to erect its proposed sign. *Id.* Accordingly, the Seventh Circuit held that the plaintiff lacked standing to challenge the sign ordinance under the First Amendment.

Likewise, in *Leibundguth Storage & Van Service, Inc. v. Village of Downers Grove*, 939 F.3d 859 (7th Cir. 2019), the plaintiff brought as-applied and facial challenges to a municipality's sign ordinance, urging the ordinance amounted to a content-based regulation. *Id.* at 860. But the plaintiff failed to show that the physical standards its sign violated were impermissible time, place, and manner restrictions. *Id.* at 862. Bypassing the main issue briefed by the parties—both here and in *Leibundguth*, as

to the interaction between *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980)—the Seventh Circuit held that the plaintiff failed to show that success in the suit would redress the noncompliance of its sign.  939 F.3d at 861.  Although its brief opinion did not speak in terms of standing, the court wrote, "Leibundguth's problems come from the ordinance's size and surface limits, not from any content distinctions."  *Id.*

Many courts applying *Harp* have found that severability of an ordinance is properly addressed during the jurisdictional inquiry for purposes of analyzing the redressability prong of standing.  *See Paramount Media Grp., Inc. v. Village of Bellwood*, No. 13-C-3994, 2017 WL 590281, at *6 (N.D. Ill. Feb. 14, 2017), *aff'd on other grounds*, 929 F.3d 914 (7th Cir. 2019); *Covenant Media of Ill., L.L.C. v. City of Des Plaines*, 476 F. Supp. 2d 967, 984 (N.D. Ill.), *decision vacated in part on reconsideration*, 496 F. Supp. 2d 960 (N.D. Ill. 2007); *Lockridge v. Village of Alsip*, No. 03 CV 6720, 2005 WL 946880, at *2 (N.D. Ill. Apr. 18, 2005); *see also Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) ("The district court properly considered the provisions of the sign code to be severable in making its overbreadth standing determination.").

Putting this all together, the Court finds GEFT has failed to establish Article III standing as to Count I.  The only provision of the County's Sign Standards GEFT really attacks in its briefs is the off-premises commercial sign ban.  *See* Ord. § 807-6(B)(5).  Put aside that the ban is likely constitutionally sound given the continued

13

vitality of squarely on-point Supreme Court authority, holding that the ban is unconstitutional would not solve GEFT's problems.[5]

### 2. Severability

Even if the Court were to find that the off-premises commercial sign ban violates the First Amendment, the ban would be severable. The Supreme Court has remarked before that "[s]everability of a local ordinance is a question of state law . . . ." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772 (1988) (citing *Mayflower Farms, Inc. v. Ten Eyck*, 297 U.S. 266, 274 (1936)).[6] Severability concerns "whether the infirm provision of a statute is severable, leaving the remainder intact." *City of Hammond v. Herman & Kittle Props., Inc.*, 119 N.E.3d 70, 87 (Ind. 2019) (citation

---

[5] *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–12 (1981) (upholding sign code's distinction between on-premises and off-premises commercial signs); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn . . . earlier authority sub silentio.").

[6] It is not clear why this is so, especially when—as here—a challenged law does not involve a limiting construction imposed by state courts. Severability is simply a question of statutory interpretation. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2349 (2020) (framing inquiry as determining "Congress's 'actual intent' as to severability"). And basic rules of statutory interpretation generally do not change from jurisdiction to jurisdiction. Perhaps that is why *American Association of Political Consultants* favorably cited a case in which the Supreme Court severed, without reference to state severability doctrine, "discriminatory wine-and-cider amendments" from an underlying state statute generally prohibiting the manufacture of alcohol. *See id.* at 2353 (citing *Eberle v. Michigan*, 232 U.S. 700, 704–05 (1914)). In any event, the state severability law versus federal severability law issue need not be resolved here. Indiana's law of severability is not unique. And, in analyzing severability, Indiana courts draw from Supreme Court caselaw on severability in federal statutes. *See, e.g.*, *Ind. Ed. Emp. Rels. Bd. v. Benton Cmty. Sch. Corp.*, 365 N.E.2d 752, 761–62 (Ind. 1977) (relying on *Carter v. Carter Coal Co.*, 298 U.S. 238 (1935), which reviewed a federal law). The Court therefore draws on both state court cases and the Supreme Court's most recent discussions of severability.

omitted).  That inquiry may be broken down into two questions: (1) "whether the statute can stand on its own without the invalid provision," and (2) "whether the legislature intended the remainder of the statute to stand if the invalid provision is severed."  *Id.*  If the answer to either question is negative, "the offending provision is not severable, and the whole statute must be stricken."  *Id.*  "The inclusion of a severability clause creates a presumption that the remainder of the Act may continue in effect."  *Ind. Ed. Emp. Rels. Bd.*, 365 N.E.2d at 762.  The Indiana Supreme Court has noted before that a severability clause is "only one indication of legislative intent."  *Id.* at 761.    However,  under  the  currently  prevailing  modes  of  statutory interpretation,

> When Congress includes an express severability or nonseverability clause in the relevant statute, the judicial inquiry is straightforward. At least absent extraordinary circumstances, the Court should adhere to the text of the severability or nonseverability clause. That is because a severability or nonseverability clause leaves no doubt about what the enacting Congress wanted if one provision of the law were later declared unconstitutional.

*Am. Ass'n of Pol. Consultants*, 140 S. Ct. at 2349 (7-2 holding on this point).  The Supreme Court added that presence of a severability clause thus creates a "strong presumption of severability."  *Id.* at 2356.

Here, the County's zoning ordinance contains a severability clause, which states,

> The provisions of this ordinance are separable. If any part or provision of these regulations or the application thereof to any person or circumstances is adjudged invalid by a court of competent jurisdiction, such judgment shall be confined in its operation to the part, provision, or application directly involved in the controversy in which such judgment shall have been rendered and shall not affect or impair the validity of the remainder of these regulations or the application thereof to other persons or circumstances. The County hereby declares that it would have enacted the remainder of these regulations even without any such part, provision or application.

15

Ord. § 800-6(D).  "[F]irm adherence to the text of severability clauses," *Am. Ass'n of Pol. Consultants*, 140 S. Ct. at 2356, leads the Court to the conclusion that the clause is all but dispositive of the County's legislative intent: that invalid provisions be severed.  Moreover, the ban on off-premises commercial signs is just one provision of a comprehensive sign code.  The scheme does not seem facially unworkable without the ban.  Rather, the Court thinks the permit scheme can "stand on its own without the invalid provision[.]"  *Herman & Kittle Props.*, 119 N.E.3d at 87.

Thus, the ban on off-premises commercial signs, even if unconstitutional, would be severable.  Beyond that ban, GEFT has utterly failed to challenge the other grounds for its proposed digital billboard being noncompliant.  Its billboard violates the ban on changeable copy, Ord. § 807-6(B)(2), sign area limits, Ord. § 807-6(D), height limits, Ord. § 807-6(F)(1), side/rear setback rules, Ord. § 807-6(F)(2), and front setback rules, Ord. § 807-6(F)(3).  GEFT has not challenged these provisions as invalid time, place, and manner requirements, and they would easily pass muster even if GEFT had done so.  *See, e.g.*, *Leibundguth*, 939 F.3d at 862 (finding size and presentation rules in sign ordinance passed scrutiny under *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).  Accordingly, "[GEFT] lacks standing to challenge . . . the sign code, because it could not put up its sign even if it achieved total victory in this litigation."  *Harp*, 9 F.3d at 1291.  Count I must be dismissed for lack of subject-matter jurisdiction.

16

*B. Count II: Prior Restraint*

In Count II, GEFT argues that the County's sign scheme is a prior restraint that lacks the substantive and procedural safeguards required of prior restraints. The County counters that those requirements are either fulfilled or unnecessary.

1. <u>Standing</u>

A First Amendment challenge to a permitting or variance scheme "does not involve the conventional standing requirements." *Weinberg v. City of Chicago,* 310 F.3d 1029, 1043 (7th Cir. 2002) (concluding book peddler had standing to bring prior restraint claim against City based on licensing ordinances he believed gave City unbridled discretion). "In the area of freedom of expression . . . [a plaintiff] has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not [its] conduct could be proscribed by a properly drawn statute, and whether or not [it] applied for a license." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 756 (1988) (quoting *Freedman v. Maryland,* 380 U.S. 51, 56 (1965)). In *Freedman,* the Supreme Court explained that "standing in such cases was appropriate 'because of the danger of sweeping and improper application in the area of First Amendment freedoms.'" *Southworth v. Bd. of Regents of Univ. of Wis. Sys.,* 307 F.3d 566, 575 (7th Cir. 2002) (quoting *Freedman,* 380 U.S. at 56). GEFT has standing to bring a facial challenge to the permitting and variance provisions of the Sign Standards as unconstitutional prior restraints. If GEFT can show that the permitting and variance provisions are unconstitutional,

GEFT could put up its proposed billboard as long as it otherwise complies with the constitutional provisions of the ordinance.

### 2. Legal Rule

A prior restraint is any law "forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted). Prior restraints are "highly disfavored and presumed invalid." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1045 (7th Cir. 2002) (citations omitted). But a prior restraint is not per se unconstitutional, and it may pass muster under the First Amendment if it meets one of several exceptions "carved out" by the courts. *Stokes v. City of Madison*, 930 F.2d 1163, 1168–69 (7th Cir. 1991).

The County's sign regulations resemble a prior restraint. The general rule of the Sign Standards is that no sign may be published unless the County first issues a permit. Ord. § 807-3. The Sign Standards therefore "[give] public officials the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975).

As the Sign Standards meet the definition of a prior restraint, the Court must evaluate the constitutional status of the restraint. As relevant here, two lines of cases have sprouted around prior restraints: one focused on substantive limits on official discretion and one focused on procedural safeguards. Which limits on discretion are required depend on whether the law in question is content-neutral or content based. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). All prior restraints—

18

even content-neutral time, place, and manner regulations[7]—must substantively "contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Id.* at 323.

A content-based law, however, must also contain the stringent procedural protections announced in *Freedman v. Maryland*, 380 U.S. 51, 58 (1965). *See Thomas*, 534 U.S. at 322. In *Freedman*, the Supreme Court held that a state's film-review scheme was unconstitutional because it lacked three procedural safeguards: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990) (citing *Freedman*, 380 U.S. at 58–60). Similarly, *FW/PBS* involved a licensing scheme that "target[ed] businesses purveying sexually explicit speech," 493 U.S. at 224, prompting the Supreme Court to require of the challenged regulation variants of two of the *Freedman* safeguards, *see Thomas*, 534 U.S. at 322 n.2. *FW/PBS* clarified that the first two *Freedman* safeguards included a requirement that a "license for a First Amendment-protected business must be issued within a reasonable period of time . . . ." 493 U.S. at 228. According to GEFT, the Sign Standards, specifically the

---

[7] GEFT has not argued that the County's ordinance fails to satisfy other requirements of time, place, and manner jurisprudence, under which a permit scheme "must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Thomas*, 534 U.S. at 323 n.3 (citations omitted). Accordingly, the Court will not address those other requirements.

permitting and variance processes, fail to comply with any of these prior-restraint principles.

Since the procedural side of these prior-restraint rules only comes into play when a regulation is "content-based," *Thomas*, 534 U.S. at 322, the Court must determine what the term "content-based" means in the context of prior restraints. In the Court's original summary judgment decision, the Court focused on the commercial aspects of the speech GEFT intends to communicate on its billboard without evaluating the noncommercial aspects. Yet, the Sign Standards apply to both commercial and noncommercial speech.

The first step in deciding whether a law is content based or content neutral, is "determining whether the law is content neutral on its face." *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015). A regulation of speech is facially content based if it draws distinctions "based on the message a speaker conveys," *id*. at 163, or "singles out specific subject matter for differential treatment," *id*. at 169. For example, "a law banning the use of sound trucks for political speech—and only political speech— would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id*. (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).

*Reed* and *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020), illustrate how this test for facial content neutrality works. At issue in *Reed* was a sign code that defined different types of signs based on the subject matter of the sign—temporary directional signs, political signs, ideological signs, and more—

and subjected each category to different size and location restrictions. 576 U.S. at 164. The sign code was obviously content based on its face, the Supreme Court said, since the government invariably had to look at the content of the sign to determine how the sign was to be regulated. *Id*. Likewise, *American Association of Political Consultants* concerned a general ban on robocalls to cell phones, from which robocalls to collect government debt were exempted. 140 S. Ct. at 2346. The Supreme Court said this:

> Under § 227(b)(1)(A)(iii), the legality of a robocall turns on whether it is "made solely to collect a debt owed to or guaranteed by the United States." A robocall that says, "Please pay your government debt" is legal. A robocall that says, "Please donate to our political campaign" is illegal. That is about as content-based as it gets. Because the law favors speech made for collecting government debt over political and other speech, the law is a content-based restriction on speech.

*Id*.

Turning to the case at hand, two sections of the Sign Standards are content based. First, the County's ordinance exempts four categories of signs from the general requirement that a permit be obtained before any sign is published: (1) small signs, (2) governmental signs, (3) "sculptures, fountains, mosaics and design features which do not incorporate advertising or identification," and (4) temporary noncommercial signs. Ord. § 807-3(C). GEFT does not challenge exemption (1) for small signs. The other three exemptions are plainly content based under *Reed*. The ordinance defines governmental signs, design features not incorporating "advertising or identification," and temporary noncommercial signs in § 801-2, and it regulates those sign categories differently in § 807-3(C). The County has no way to tell what regulations to apply to

21

a sign unless it reads the content of the sign's message and categorizes it. "The restrictions in the Sign Code that apply to any given sign thus depend entirely on the communicative content of the sign." *Reed*, 576 U.S. at 164.

The off-premises advertising ban also makes the sign ordinance content based under *Reed*. The County prohibits off-premises commercial signs but allows on-premises commercial signs that meet certain objective requirements. *See* Ord. § 807-6(B)(5). Distinctions between off-premises and on-premises signs are inherently content based because the government must evaluate the content of the sign (that is, whether the sign relates to activities occurring on-site) to determine whether the sign is an on-premises sign that is subject to the permit requirement or an off-premises sign that is almost always prohibited. "The fact that a government official has to read a sign's message to determine the sign's purpose is enough, under *Reed*," to make the law content based. *GEFT Outdoor, LLC v. City of Westfield*, 491 F. Supp. 3d 387, 405 (S.D. Ind. 2020) (collecting cases and finding that a city's on-premises/off-premises distinction was content based); *see also GEFT Outdoor, LLC v. Consol. City of Indianapolis*, 187 F. Supp. 3d 1002, 1016 (S.D. Ind. 2016) (same).

In its briefs, the County disclaims any intent to engage in content-based discrimination. The County says the lack of such a purpose is sufficient to show that the ordinance is content-neutral. For that proposition, the County cites *Hill v. Colorado*, 530 U.S. 703 (2000), where the Supreme Court upheld a statute banning the "knowing approach" for the purpose of "oral protest, education, or counseling" within eight feet of a non-consenting person who is within 100 feet of a healthcare

22

facility. *Hill* describes the government's content-neutral purpose as the "principal inquiry" in deciding whether a regulation is content based. 530 U.S. at 719 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). But the Supreme Court in *Reed* squarely rejected the idea that a law is content-neutral so long as the legislature did not *intend* to discriminate on the basis of content. *See Reed*, 576 U.S. at 165 ("A law that is content based on its face is subject to strict scrutiny *regardless* of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." (emphasis added)); *id*. at 168 ("We have repeatedly rejected the argument that discriminatory treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas." (cleaned up)). To be sure, that is not the only part of *Hill*'s reasoning that no longer carries water. *Compare Hill*, 530 U.S. at 721 ("We have never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct."), *with Reed*, 576 U.S. at 164 (suggesting that examining the content of speech to determine how it should be regulated made the challenged ordinance content based).

Even if the County lacked any invidious motive in enacting the sign ordinance, the ordinance distinguishes between speech based on the speech's subject matter and regulates each category of speech differently. The sign ordinance is therefore facially content based because it contains exemptions (2)–(4) and the on-premises/off-premises commercial sign distinction. Therefore, the Sign Standards are subject to

the *Freedman* procedural safeguards, *see Thomas*, 534 U.S. at 322, as well as substantive limits on official discretion.

   3. <u>Application</u>

   The first question is whether the Sign Standards contain the *Freedman* procedural safeguards. They do not. *See* Ord. § 807, 812. The Sign Standards do not require that a permit or variance be issued within a reasonable period of time. *See FW/PBS*, 493 U.S. at 228. Nor do the Sign Standards place on the County the burden of going to court to suppress the speech. *See id.* at 227. Instead, an applicant may appeal the denial of a permit or variance; however, "there is no telling how long that case will take to get through the legal system." (Wilson Dep. 55:14–17, ECF No. 54-2.) Thus, the Sign Standards do not provide for prompt judicial review. *See, e.g.*, *XXL of Ohio, Inc. v. City of Broadview Heights*, 341 F. Supp. 2d 765, 802 (N.D. Ohio 2004) (observing that if an applicant seeks an injunction to prevent enforcement of the sign ordinance, the burden of proof is on the party seeking the injunction); *3708 N. Ave. Corp. v. Village of Stone Park*, No. 94 C 7267, 1996 WL 82465, at *6 (N.D. Ill. Feb. 23, 1996) (concluding that the mere fact that a license applicant whose application has been "tabbed" can sue for injunctive relief was insufficient to provide an avenue for prompt judicial review).

   The next question is whether the Sign Standards substantively run afoul of the requirement that any prior restraint "contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas*, 534 U.S. at 322. Put another way, any prior restraint must bound the government's discretion

using "narrow, objective, and definite standards." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969).

Starting with the permitting process, GEFT says the off-premises commercial sign prohibition gives the County too much discretion.  Recall that the sign ordinance defines an off-premises commercial sign as any commercial sign that "directs attention to a business, commodity, service or entertainment not conducted, sold or offered on the premises where the sign is located, or which business, commodity, service or entertainment forms only minor or incidental activity upon the premises where the sign is displayed." Ord. § 801-2.  By its terms, the Court does not see how this definition is so broad that it gives the County "unbridled discretion." *Plain Dealer Publ'g Co.*, 486 U.S. at 757.  If a standard like "unreasonable danger" is narrow enough for the Supreme Court, *see Thomas*, 534 U.S. at 324, then the County's comparably specific definition of "off-premises commercial sign" here is certainly narrow enough for this Court.   In its briefs, GEFT posits three examples of purportedly ambiguous signs under that definition.  (*See* Pl.'s Reply Br. at 25–26, ECF No. 68.)  But the Court has no trouble categorizing those examples as either off-premises commercial signs or other types of signs.

In further support of its argument, GEFT points to County Planning Director Larry Wilson's alleged description of the off-premises sign definition as "muddy" and Mr. Wilson's practice of sometimes referring to counsel the question of whether a certain sign constitutes an off-premises commercial sign.  (*See* Wilson Dep. Tr. 23:23–26:16, ECF No. 54-2.)  For one, GEFT's citations to the record here are misleading.

Mr. Wilson did not say that the question of whether a given sign constitutes an off-premises commercial sign is "muddy"; he said, "[T]he *constitutional law* in this area is muddy. Even the *Reed* case is muddy." (*Id.* at 25:24–25 (emphasis added).) The Court can hardly disagree that *Reed* has muddied the waters of First Amendment law. *See generally* Section III.A. Additionally, Mr. Wilson says he sometimes refers tough sign-classification questions to the County's attorneys because Mr. Wilson is not a lawyer. (*Id.* Wilson Dep. Tr. 26:14–16, ECF No. 54-2.) The Court struggles to see why that practice is at all objectionable. In any event, whether an ordinance contains sufficiently "narrow, objective, and definite standards," *Shuttlesworth*, 394 U.S. at 151, is a question of law for the Court, and Mr. Wilson's deposition testimony does not change the Court's conclusion that the sign ordinance's definition of "off-premises commercial sign" does not come close to granting unbridled discretion to the County.

More generally, GEFT argues that the subjective nature of the permitting standards are insufficient to guide the County's permitting decisions and allows the County to reject a sign based on its content. In *Conteers LLC v. City of Akron*, No. 5:20-CV-00542, 2020 WL 5529656 (N.D. Ohio Sept. 15, 2020), the plaintiff applied for a sign permit for a billboard. The city's zoning code permitted a billboard as a conditional use. However, to obtain a permit, the applicable standards required findings, among others, that the proposed use be "harmonious with and in accordance with the general objectives of the City's Comprehensive Plan," "harmonious and appropriate in appearance," and not be "disturbing to existing or future neighboring

26

uses." *Id.* at *2.  The plaintiff's permit application was denied, and the plaintiff sued challenging the ordinance as an unconstitutional prior restraint on speech.  The court concluded that the permit standards were "highly subjective," "nebulous and vague" and thus insufficient to guide officials' discretion to grant or deny conditional use permits.  *Id.* at *11.  The court therefore held that zoning ordinance constituted an unconstitutional prior restraint on speech.  *Id.* at *11–12.  Numerous other courts have held that ordinances with similar standards conferred overly broad discretion to the issuing authority and thus the permit requirement was unconstitutional.  *See, e.g.*, *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 817–19 (9th Cir. 1996) (standard for permit requiring that a sign "not have a harmful effect upon the health or welfare of the general public and will not be detrimental to the welfare of the general public and will not be detrimental to the aesthetic quality of the community or the surrounding land uses" contained no limit on officials discretion); *CBS Outdoor, Inc. v. City of Royal Oak*, No. 11-13887, 2012 WL 3759306, at *6 (E.D. Mich. Aug. 29, 2012) (holding permit standards requiring that signs and billboards be "harmonious and in accordance with the general objectives of the Master Plan," "harmonious and appropriate in appearance with the existing or intended character of the general vicinity," "not . . . disturbing to existing uses," and "an improvement in relation to property" were "vague," "ambiguous," and "arbitrary" and an unconstitutional prior restraint on speech).  Likewise, the Sign Standards permitting requirements are subjective and vague and do not sufficiently limit the County's discretion to grant or deny a permit, creating an unacceptable risk that the permit

27

decision could be based on the content of the intended speech. The permit requirement runs afoul of the constitutional requirement that prior restraints contain adequate standards to guide official decision making.

GEFT also contends that the variance process associated with the Sign Standards grants unbridled discretion to the County. The Court agrees that the variance process confers too much discretion on the County in two ways.

First, the standards guiding the BZA in considering a variance application are vague. For use variances, these standards include criteria such as whether the variance would be "injurious to the public health, safety, and general welfare"; whether the surrounding property would be "affected in a substantially adverse manner"; whether a denial of a variance would cause "unnecessary hardship"; and whether a variance would "interfere substantially with the Comprehensive Plan." Ord. § 812-5. The design variance standards are comparable. *See* Ord. § 812-6. These factors are "value laden and susceptible to wide and varying differences of opinion." *Bickers v. Saavedra*, 502 F. Supp. 3d 1354, 1362 (S.D. Ind. 2020); *see also Int'l Outdoor*, 974 F.3d at 698 ("The standards for granting a variance contained multiple vague and undefined criteria, such as 'public interest,' 'general purpose and intent of this Chapter,' 'adversely affect[ing],' 'hardship,' and 'practical difficulty.'"); *Shuttlesworth*, 394 U.S. at 159 (striking permit scheme in which permits' issuance was "guided only by [City Commission's] own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience'"); *Lakewood*, 486 U.S. at 769–70 (invalidating licensing scheme in which mayor could issue permits if it was "in the

public interest").  These kinds of nebulous criteria create too high a risk that the BZA might grant or deny a variance based on whether it likes or dislikes the content or viewpoint of a given sign.  Using this subjective variance procedure, the BZA could essentially permit whatever speech it favored, even if such speech appeared on a sign flouting countless design and use standards in Chapter 807, while requiring disfavored speech to abide by every sign standard to a T.

Second, the BZA has the power to approve variances contingent on any condition imposed "to protect the public health, and for reasons of safety, comfort and convenience."  Ord. § 812-7.  That standard does little to constrain the County.  The County could impose essentially whatever conditions it wanted on a sign approved through the variance process, which constitutes impermissibly broad discretion.  *See Lakewood*, 486 U.S. at 769–70 (holding unconstitutional part of ordinance giving mayor discretion to impose "such other terms and conditions [he] deemed necessary and reasonable" when granting a news rack permit); *Bickers*, 502 F. Supp. 3d at 1363 (holding unconstitutional ordinance provision giving city power to condition grant of special-use permit on whatever terms city "deem[s] necessary to protect adjoining property owners").

The County counters that the variance process, which controls regular variances for real property and variances from the sign ordinance alike, should not be considered part of the sign ordinance.  The County says the State of Indiana should answer for any constitutional problems inherent to the variance process, since Indiana requires local governments to adopt a variance process whenever they

29

establish a zoning ordinance.  *See* Ind. Code § 36-7-4-901.  But the County has not pointed out any part of the Indiana Code requiring the County to consult the same criteria governing real-property variances, which usually do not implicate First Amendment interests, when considering variances from the sign ordinance, which much more often implicate the First Amendment.  To the contrary, the County could have enumerated a separate set of "narrow, objective, and definite standards," *Shuttlesworth*, 394 U.S. at 151, for the BZA to apply when considering variances from the Sign Standards.

The County also argues that the variance provision cannot be considered a prior restraint because it potentially provides relief from the Sign Standards rather than increasing the amount of suppressed speech.  The Sixth Circuit rejected this specific argument in *International Outdoor*, reasoning that "the variance provision of the City of Troy Sign Ordinance . . . is not independent from other provisions of the ordinance, but rather inextricably linked to them by providing a way of relaxing the very restrictions imposed by the Sign Ordinance."  974 F.3d at 702.  The Court agrees with that reasoning.  The variance process is not independent of the Sign Standards because the County chose to regulate variances from the Sign Standards using the generalized variance process in Chapter 812.  As applied to variances from the Sign Standards, the variance process does not sufficiently constrain official discretion.

4. <u>Severability</u>

In short, the permitting and variance processes substantively confer unbridled discretion on the County and the *Freedman* procedural protections are missing.  For

substantially the same reasons as stated *supra* in Section III.A.2, the Court credits the severability clause at Ordinance § 800-6(D) and finds that the variance process in Chapter 812 is invalid but severable insofar as it applies to variances from the Sign Standards.  Insofar as it regulates zoning decisions that do not implicate the First Amendment, the variance procedure stands.

The permitting process in Chapter 807, that is Ord. § 807-3, is severable, too. While the permitting process is a key part of the Sign Standards, the scheme does not seem facially unworkable without it.  Instead of taking place on the front end before a sign is erected, regulation of signs will occur on the back end after a sign has been erected through an ordinance enforcement procedure.  *See* Ind. Code § 36-1-4-11. Striking the permitting process neither broadens the scope of the Sign Standards nor leads to a result unintended by the County.  The remaining provisions such as the size, height, and setback requirements and the prohibition on certain types of signs still advance the stated purposes and objectives of the Sign Standards.  Thus, without the permitting process, the County nevertheless has a means to control signs that are located in the County.  In the Court's view, the Sign Standards can "stand on [their] own without the invalid" permitting and variance processes. *Herman & Kittle Props.*, 119 N.E.3d at 87.

### C.  Count III: Relief Under Indiana Code

The Court has supplemental jurisdiction to consider the state-law cause of action asserted in Count III.  *See* 28 U.S.C. § 1367.

Under Indiana Code §§ 36-7-4-1614(d) and 36-7-4-1615, a court may grant relief from an unlawful zoning decision that causes prejudice. Such court "may" set aside the zoning decision and either (1) remand the case to the applicable board of zoning appeals or, alternatively, (2) "compel a decision that has been unreasonably delayed or unlawfully withheld." Ind. Code § 36-7-4-1615.

Here, neither of these options is appropriate. Remand would accomplish nothing. Because the Court is striking the ordinance's generalized variance provision in Chapter 812 as it applies to variances from the Sign Standards, there would be no variance mechanism at all on remand, and GEFT's variance application would lead nowhere. For similar reasons, compelling a decision in GEFT's favor would be improper. The standards from which GEFT sought variances—Ordinance §§ 807-6(B)(2), 807-6(B)(5), 807-6(D), 807-6(F)(1), 807-6(F)(2), and 807-6(F)(3)—remain intact after today's decision, so GEFT's proposed sign still does not comport with the Sign Standards. Accordingly, the Court must decline GEFT's request for relief under Indiana Code §§ 36-7-4-1614(d) and 36-7-4-1615.

### D. Damages

The remaining issue is the amount of damages GEFT has sustained from the County's denial of its variance application. The County moves for summary judgment on damages, but its briefs did not address GEFT's purported lack of damages beyond

arguing that there were none given that the ordinance was constitutional in full. The Court has found otherwise above. Thus, a jury must pass on the issue of damages.

## IV.    Conclusion

In summary, the motion for reconsideration, (ECF No. 94), is **granted**. The cross-motions for summary judgment, (ECF Nos. 53, 63), are each **granted in part** and **denied in part**. Count I of GEFT's Complaint is **dismissed for lack of subject-matter jurisdiction**. On Count II, summary judgment is **granted** in favor of GEFT only as to the permitting process and generalized variance procedure's application to the Sign Standards. On Count III, summary judgment is **granted** in favor of the County. The issue of GEFT's damages must proceed.

GEFT's Motion for Permanent Injunction, (ECF No. 93), is **granted** to the extent that the County will be **permanently enjoined** from (1) enforcing the permit requirement in Chapter 807, section 3; and (2) applying the variance process in Chapter 812 to variances from the sign requirements in Chapter 807. An order granting the injunction will be issued separately.

The infirm provisions of the County's sign ordinance are severable, so the Sign Standards are otherwise enforceable. The variance process may remain in effect as applied to zoning decisions that do not implicate First Amendment-protected speech. No order that the County allow GEFT to erect its digital billboard shall issue, as the proposed sign does not appear to be in compliance with several provisions of the Sign Standards.

Because the Court has now reconsidered its prior decision on the cross-motions for summary judgment, the Motion to Stay Case Pending Ruling, (ECF No. 107), is **denied** without prejudice to filing of a motion to stay pending appeal following the parties' consideration of today's decision.

Because of the impending trial and final pretrial conference, GEFTS's response to Defendants' Motion to Exclude Plaintiff's Expert Paul Wright, (ECF No. 109), is due by **December 3, 2021**, and any reply is due by **December 10, 2021.**  Any other pretrial filing that was due two weeks before the final pretrial conference, (*see* Final Pretrial Conference Order, ECF No. 96), is now due by **December 3, 2021**, and any other pretrial filing that was due one week before the final pretrial conference, (*see id.*), is now due by **December 10, 2021**.  In the event that the final pretrial conference is continued, these deadlines shall also be continued commensurate with such continuance.

Finally, the Magistrate Judge is requested to meet with the parties and discuss resolution of the damages claim before the trial.

**SO ORDERED.**

Date: 11/23/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel of record

34